IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| KEVIN DEYON ROSSUM #78505 | § | |
| VS. | § | CIVIL ACTION NO. 6:23cv017 |
| KILGORE POLICE DEPT., et al. | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiff Kevin Deyon Rossum, an inmate of the Gregg County Jail, proceeding *pro se* and *in forma pauperis*, filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights in connection with his arrest. The case was referred to the undersigned for findings of fact, conclusions of law, and recommendations for the disposition of the case.

**I. Relevant Procedural History and Alleged Facts**

Plaintiff filed his original complaint in January 2023. (Dkt. #1.) On January 11, 2023, the Court pointed out several deficiencies in the complaint that Plaintiff needed to cure by filing an amended complaint. (Dkt. #4.) Specifically, the Court observed that Plaintiff did not provide material facts about his claim, including when the stop happened, any facts that would raise his claim of racial profiling beyond his own conclusion and speculation, or the status of any criminal charges arising from the stop. (*Id.* at 1–2.) The Court expressly instructed Plaintiff to "identify any criminal charges arising from the events alleged in the complaint and the current status of those charges" in his amended complaint. (*Id.* at 2.) Thus, Plaintiff was given fair opportunity to rectify the deficiencies of his original complaint. *See Eason v. Thaler*, 14 F.3d 8 (5th Cir. 1994).

Plaintiff submitted his amended complaint on January 30, 2023 (Dkt. #6), and it is before the Court for screening. In it, Plaintiff still does not provide a date for the stop in question. He

alleges that Officer Charles Taylor of the Kilgore Police Department had a "white guy" pulled over and had his patrol car located near Plaintiff's vehicle at the Gateway Truck Stop. (Dkt. #6 at 4; Dkt. #6-1 at 1.) The patrol car was in Plaintiff's way as he was trying to back out of his parking spot, so he asked Defendant Taylor to let him out. (Dkt. #6 at 4.) Taylor told Plaintiff to go ahead, and Plaintiff managed to back out and leave. (*Id.*) But once Plaintiff was out of his parking spot, Taylor proceeded to pull him over. (*Id.*) Taylor first said he stopped Plaintiff because he smelled alcohol, but later said it was because of Plaintiff's registration. (*Id.*) Taylor gave him a sobriety test, which he said Plaintiff failed. (*Id.*) Taylor asked Plaintiff for permission to search his car, which Plaintiff refused, so Taylor had a dog walk around the car and falsely stated that the dog had "hit on something." (Dkt. #6-1 at 1.) Taylor "said that it was that weed I been smoking that is (racially profiling)," then searched Plaintiff's vehicle and "found one pill." (Dkt. #6 at 4; Dkt. #6-1 at 1.) Taylor arrested Plaintiff for D.W.I. and possession. (*Id.*)

At the police station, Taylor sought to have blood drawn for the alcohol investigation because he did not know how to operate the "blower," but Plaintiff refused. (Dkt. #6-1 at 1.) When B.J. Burns—another officer who could work the "blower"—arrived, Plaintiff blew a 0.00 twice. (*Id.*) Burns told Taylor that Plaintiff was "no where near drunk," and "we aren't doing" a blood test. (Dkt. #6 at 4.) Plaintiff alleges that all of Taylor's actions were motivated by racial profiling and intentional harassment.

In addition to Taylor, Plaintiff names the Kilgore Police Department for knowing of Taylor's improper tactics and police chief Johnathan Gage for "neglect to proper inevestigate" [sic]. (Dkt. #6 at 3.) He also names a fellow inmate and Officer Burns simply as witnesses. (*Id.*) He seeks compensation for lost wages and pain and suffering. (*Id.* at 4.)

**II. Legal Standards and Preliminary Screening**

Plaintiff is a prisoner seeking redress from an officer or employee of a governmental entity, and he is proceeding *in forma pauperis*, so his claims are subject to preliminary screening pursuant to the Prison Litigation Reform Act as required by 28 U.S.C. §§ 1915A and 1915(e). Those statutes direct *sua sponte* dismissal of a complaint—or any portion thereof—if the Court finds it frivolous or malicious, if it fails to state a claim upon which relief can be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous if it lacks an arguable basis in law or fact. *Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009). The Fifth Circuit has held that a complaint lacks an arguable basis in fact when "the facts alleged are fantastic or delusional scenarios or the legal theory upon which a complaint relies is indisputably meritless." *Id*. (quoting *Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir. 1999) (internal quotation marks omitted)). In other words, during the initial screening under Section 1915A, a court may determine that a prisoner's complaint is frivolous if it rests upon delusional scenarios or baseless facts—and dismiss the complaint. *See Henry v. Kerr County, Texas*, No. SA-16-CV-284-DAE (PMA), 2016 WL 2344231, at *3 (W.D. Tex. May 2, 2016) ("A court may dismiss a claim as factually frivolous only if the facts alleged are clearly baseless, fanciful, fantastic, delusional, or otherwise rise to the level of the irrational or the wholly incredible, regardless of whether there are judicially noticeable facts available to contradict them.") (citing *Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992)).

Moreover, a complaint fails to state a claim upon which relief may be granted where it does not allege sufficient facts which, taken as true, state a claim which is plausible on its face and thus does not raise a right to relief above the speculative level. *See Montoya v. FedEx Ground Packaging Sys. Inc.*, 614 F.3d 145, 149 (5th Cir. 2010) (citing *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 555 (2007)). A claim has factual plausibility when the pleaded factual content allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Hershey v. Energy Transfer Partners, L.P.*, 610 F.3d 239, 245 (5th Cir. 2010). This plausibility standard is not akin to a probability standard; rather, the plausibility standard requires *more than the mere possibility* that the defendant has acted unlawfully. *Twombly*, 550 U.S. at 556.

Although all well-pleaded facts are taken as true, the district court need not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions. *See Whatley v. Coffin*, 496 F. App'x 414 (5th Cir. 2012) (unpublished) (citing *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). Crucially, while the federal pleading rules do not require "detailed factual allegations," the rule does "demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading offering "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice, nor does a complaint which provides only naked assertions that are devoid of further factual enhancement. *Id.*

**III. Discussion and Analysis**

    A. *Racial Discrimination*

If true, Plaintiff's claim against Taylor could conceivably implicate the validity of any current or future conviction in his criminal case and would not be currently cognizable in a Section 1983 action. Because Plaintiff failed to obey the Court's express instruction to identify any charges arising from his arrest and their current status, the undersigned has consulted the publicly available records about Plaintiff's criminal charges and incarceration. It appears that Plaintiff was booked by the Kilgore Police Department on May 29, 2022, for possession of less than two ounces of marijuana and released that same day. *See* Jail Records Search Results for Rossum, Kevin Deyon,

available at http://beta.co.gregg.tx.us/OdysseyPA/JailingSearch.aspx?ID=400 (last visited Feb. 7, 2023). He was formally charged by complaint/information with possession of less than two ounces of marijuana on July 28, 2022, and granted bond. *See* Register of Actions for Case No. 2022-0992, *State of Texas v. Kevin Deyon Rossum*, available at http://beta.co.gregg.tx.us/OdysseyPA/CaseDetail.aspx?CaseID=1685299 (last visited Feb. 7, 2023). His bond was later forfeited, and a bond forfeiture warrant was issued on September 2, 2022. *Id.* He has been incarcerated in the Gregg County Jail since December 12, 2022, and the possession charge appears to still be pending.

A Section 1983 claim that challenges the validity of a standing criminal conviction or sentence is not cognizable unless and until the plaintiff has succeeded in having the conviction or sentence overturned or invalidated through habeas corpus or other proper means. *Wilkinson v. Dotson*, 544 U.S. 74, 78–82 (2005); *Heck v. Humphrey*, 512 U.S. 477 (1994). If a plaintiff challenges the constitutionality of criminal proceedings "before he has been convicted . . . it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended." *Wallace v. Kato*, 549 U.S. 384, 393–94 (2007). "If the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, *Heck* will require dismissal; otherwise, the civil action will proceed, absent some other bar to suit." *Id.* at 394. However, claims of racial profiling do not always imply that a subsequent conviction would be invalid, and determining whether a claim has that effect can be complicated and tied to the specific facts of both the civil and criminal cases. *See Santos v. Welty*, No. 5:20-CV-205-BQ, 2021 WL 1799828, at *6 n.7 (N.D. Tex. Mar. 25, 2021), *report and recommendation adopted*, No. 5:20-CV-00205-H, 2021 WL 1792130 (N.D. Tex. May 5, 2021).

5

In this case, however, it is unnecessary for the Court to conduct that analysis because Plaintiff simply fails to state a claim for which relief could be granted regardless of the status or outcome of the criminal charges against him. "Selectivity in the enforcement of criminal laws is subject to constitutional restraints," and the rubric for analyzing a racial profiling claim thus draws on "ordinary equal protection standards." *Wayte v. United States*, 470 U.S. 598, 608 (1985); *see also Whren v. United States*, 517 U.S. 806, 813 (1996) (holding that claims asserting that selective enforcement of a law based on race are properly brought under the Equal Protection clause and that the clause may be violated even if police action is acceptable under the Fourth Amendment). To state a claim of racial profiling under the Equal Protection Clause and Section 1983, a plaintiff must allege that he was treated differently than similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439–40 (1985); *Bowlby v. City of Aberdeen*, 681 F.3d 215, 227 (5th Cir. 2012).

Here, Plaintiff describes a single encounter with Defendant Taylor and jumps to the conclusion that Taylor's actions must have been motivated by discriminatory intent. But he does not allege any facts that would plausibly establish such intent. To the contrary, he alleges that in the same short period of time, Taylor also stopped a "white guy," which would tend to dispute any alleged racial motivation. Plaintiff does not point to any relevant statistics or to instances in which a white person received better treatment by Taylor in similar circumstances. He has therefore failed to assert a cognizable equal protection claim. *Kock v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990); *see also McNight v. Eason*, 227 Fed. App'x 356, *1 (5th Cir. May 4, 2007) (holding that conclusory allegations of racial discrimination cannot support a viable equal protection claim).

Plaintiff also does not have a viable claim against any other named Defendant. He does not allege any personal involvement by Defendant Gage that would subject him to individual liability

under Section 1983. He accuses Gage of "neglect to proper inevestigate [sic]," but he does not specify what Gage should have investigated or why. As explained above, Plaintiff's allegations about Taylor do not rise to the level of establishing any constitutional violation. But even if they did, Defendant Gage would not automatically be liable for that violation. To the extent Plaintiff sues Gage simply because of his position of authority as police chief, lawsuits against supervisory personnel based on their positions of authority are claims of liability under the doctrine of *respondeat superior*, which does not generally apply in Section 1983 cases. *Williams v. Luna*, 909 F.2d 121 (5th Cir. 1990). A supervisor may be held liable under Section 1983 only if he is personally involved in a constitutional deprivation, a causal connection exists between the supervisor's wrongful conduct and a constitutional deprivation, or if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force behind a constitutional deprivation. *Thompkins v. Belt*, 828 F.2d 298 (5th Cir. 1987). Plaintiff does not allege any facts that would support liability under any of these theories in this case.

And the Kilgore Police Department itself is not subject to suit under Section 1983. Under the Federal Rules of Civil Procedure, a party to a lawsuit must have the capacity to be sued. Fed. R. Civ. P. 17(b). A department of a local government entity must "enjoy a separate legal existence" to be subject to a lawsuit. *See Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991). The Fifth Circuit has held that Texas law does not allow county or municipal police departments to be sued directly. *Id.* at 313-14; *see also Crull v. City of New Braunfels, Texas*, 267 F. App'x 338, 341-42 (5th Cir. 2008) ("Therefore, the Police Department is not a separate legal entity apart from the City and the district court did not err in dismissing the claims against the Police Department.").

The only other two people named in the amended complaint are alleged to be witnesses rather than perpetrators of any constitutional violation. Accordingly, Plaintiff does not state a claim for which relief can be granted against any Defendant named in the amended complaint.

## IV. Conclusion

For the reasons set forth above, Plaintiff fails to state a claim upon which relief can be granted in his amended complaint. Dismissal is appropriate where Plaintiff has already been permitted to address the deficiencies of his complaint but still fails to state a viable claim. *See Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986) (holding that "once given adequate opportunity, even a *pro se* complaint must contain specific facts supporting its conclusions"); *Garcia v. City of Lubbock, Texas*, 487 F. Supp. 3d 555, 566 (N.D. Tex. 2020) (dismissing where inmate had "already amended his complaint once" and been afforded "an opportunity to further flesh out his claims").

## RECOMMENDATION

Accordingly, the undersigned recommends that this action be dismissed with prejudice pursuant to 28 U.S.C. §§ 1915A(b)(1) and 1915(e) for failure to state a claim upon which relief can be granted.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report. A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and

legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

**So ORDERED and SIGNED this 13th day of February, 2023.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE